UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | |
|---|---|
| In re: | Case No. 15-30458 (AMN) |
| WILLIAM M. ANDERSON,<br>*Debtor* | Chapter 7 |
| THE CADLE COMPANY,<br>*Plaintiff*<br>v.<br>WILLIAM M. ANDERSON,<br>*Defendant* | Adv. Pro. No. 16-03033 (AMN)<br><br>Re: AP-ECF No. 1[1] |

## MEMORANDUM OF DECISION AFTER TRIAL

*APPEARANCES*

| | |
|---|---|
| *For the Plaintiff:* | C. Donald Neville, Esq.<br>Kroll, McNamara, Evans & Delehanty, LLP<br>65 Memorial Road, Suite 300<br>West Hartford, CT 06107 |
| *For the Defendant:* | George C. Tzepos, Esq.<br>Law Offices of George C. Tzepos<br>444 Middlebury Road,<br>Middlebury, CT 06762 |

---

[1] Citations to the docket of the underlying Chapter 7 case, Case No. 15-30458, are noted by "ECF No." Citations to the docket of this adversary proceeding, Case No. 16-03033, are noted by "AP-ECF No."

1

I. **INTRODUCTION**

Before the court is a complaint filed by The Cadle Company ("Cadle" or "plaintiff") seeking a determination that defendant and debtor William M. Anderson ("Mr. Anderson" or "defendant") is not entitled to a discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5).[2]  AP-ECF No. 1.  The plaintiff asserts the defendant should be denied a Chapter 7 discharge under Bankruptcy Code § 727(a)(3) because he failed to preserve any personal or business financial documentation whereby his true financial condition could be ascertained.  The plaintiff also asserts the defendant should be denied a discharge pursuant to Bankruptcy Code §§ 727(a)(5), (a)(4)(A), and (a)(2)(A) for not proffering a reasonable account of a loss or deficiency of assets, knowingly and fraudulently making a false representation under oath regarding his personal property, income, and business interests, and intending to hinder, delay, or defraud a creditor by concealing property within one year before his bankruptcy filing.

Following a trial, after consideration of the record, and for the reasons stated herein, the court concludes the plaintiff met its burden under § 727(a)(3) and the defendant will be denied a discharge.  The plaintiff's claims under §§ 727 (a)(4)(A), (a)(5) and (a)(2)(A) fail.

II. **JURISDICTION**

Jurisdiction arises pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This adversary proceeding is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J).  This adversary proceeding arises under the defendant's

---

[2] The Bankruptcy Code is found in Title 11 of the United States Code.  Unless otherwise stated, references to code sections are to the Bankruptcy Code.

2

Chapter 7 case pending in this District and venue is proper pursuant to 28 U.S.C. § 1409(a).

This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable here pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

### III. RELEVANT PROCEDURAL HISTORY

#### a. Defendant's Bankruptcy Case

On March 27, 2015 (the "Petition Date"), the defendant filed a voluntary Chapter 7 bankruptcy petition commencing the underlying case here ("Chapter 7 Case").  ECF No. 1.  The defendant disclosed in his bankruptcy schedules that he had no current income and did not possess any interest in real property.  ECF No. 1, p. 9.  The defendant disclosed personal property totaling $7,500.00, including $7,300.00 in cash, clothing valued at $200.00 and a fifty percent (50%) ownership interest in an entity named Front Street Properties, LLC ("Front Street, LLC") valued at $0.00.  ECF No. 1, p. 12.  In his Schedule F, the defendant listed an undisputed claim of $4,424,347.00 held by the plaintiff, Cadle.  ECF No. 1, p. 20.  On May 6, 2015, the Chapter 7 Trustee (the "Trustee") submitted a report of no distribution, finding no property available for distribution from the defendant's estate over and above exempt property.  The Trustee later withdrew that report.  ECF No. 125.

During the defendant's bankruptcy proceeding, the plaintiff conducted examinations of the defendant and several others seeking to uncover the financial condition of the defendant pursuant to Fed.R.Bankr.P. 2004.  *See* ECF Nos. 14, 23-25, 32, 33, 59-66, 80.  On August 4, 2015, the plaintiff filed a timely proof of claim against the

defendant for $4,424,347.99.  *See* Proof of Claim 1-1 ("POC 1-1"), claims register for the Chapter 7 Case.

### b. Adversary Proceeding

On August 5, 2016, the plaintiff commenced this adversary proceeding objecting to the defendant's discharge pursuant to Bankruptcy Code §§ 727(a)(2)(A) (Count One), (a)(3) (Count Two), (a)(4)(A) (Count Three), and (a)(5) (Count Four).  ECF No. 88, 123; AP-ECF No. 1.

Summons service was executed on the defendant on September 20, 2016.  AP-ECF Nos. 6, 7.  The defendant did not timely respond, and the plaintiff moved for and received a default against the defendant.  AP-ECF Nos. 8, 9.  The plaintiff subsequently filed a motion for judgment, and the defendant responded to the complaint on October 24, 2016.  AP-ECF Nos. 10, 13.  The court entered an order denying the plaintiff's motion for default judgment. AP-ECF No. 21.

On June 9, 2022, a trial for this adversary proceeding was held.  AP-ECF No. 197. Two witnesses testified: Rick Anthony Rice ("Insurance Agent") and the defendant.  AP-ECF No. 208, pp. 1-2.  The documentary evidence admitted in this case was voluminous. Any piece of evidence not admitted during trial and referenced in the parties' briefs was not considered by the court.  Similarly, any argument by counsel relying on facts for which there is no citation to the record fails.  *See, e.g.,* AP-ECF No. 207, Section D, pp. 8-9.

## IV. FACTUAL BACKGROUND AND FINDINGS

As an initial matter, the court finds much of the defendant's testimony was not credible.  The defendant testified he borrowed money with business partners to start a business constructing houses in 1987 though the initiative was financially unsuccessful,

4

and on August 17, 1993, a deficiency judgment entered against Mr. Anderson for approximately $1,473,000.00.  AP-ECF No. 205, pp. 167, 180-81.  The plaintiff here, Cadle, bought the judgment after 1993 and claims the debt now totals approximately $4,473,544.70, including interest.  AP-ECF Nos. 1, 205, pp. 182-83; POC 1-1.

To fend off Cadle's assault on his bankruptcy discharge, Mr. Anderson asked the court to believe he had no source of income for the last twenty (20) years, had not held employment since 1971, and had not possessed a bank account for the last forty (40) years.  AP-ECF No. 205, pp. 43, 42.  The defendant's own testimony later contradicted at least two of these claims when he stated he has a TD Bank account where social security checks are deposited.  AP-ECF No. 205, p. 186.  The defendant stated the last time he owned a business – a junkyard located in New Haven, Connecticut – was in 1990.  AP-ECF No. 205, p. 43.  Further, he maintains his life's work has consisted of repairing automobiles and he has never dealt well with paperwork.  AP-ECF No. 205, p.166-67.  The defendant last filed tax returns in 1990.  AP-ECF No. 205, pp. 189-90.

The defendant asserted he has difficulty reading and achieved no more than a fifth-grade education.  AP-ECF No. 205, pp. 166-67.  At one point during his testimony, the defendant asserted he suffers from dementia, though he introduced no medical or other records to support this.  AP-ECF No. 205, p. 139.

During Mr. Anderson's testimony, he had trouble remembering when he was incarcerated, claiming multiple times he was in prison from 1985 through 1990, and later claiming it was 1995 through 2000.  AP-ECF No. 205, pp. 47, 54.  The actual prison term appears to have been from 1995 through 2000.  AP-ECF No. 205, p. 54.  In any case, Mr. Anderson testified he gave his brother approximately $7,700.00 to hide (the "hidden

money") before he went to prison, and his brother gave it back when he was released.[3] AP-ECF No. 205, pp. 178, 53-55. The defendant asserted this hidden money from 2000 is the same cash he reported in his bankruptcy petition in 2015 and that he has subsisted since his release from prison in 2000 on that cash and on the goodwill of his sibling, who has provided housing and food. AP-ECF No. 205, p. 55, 178. Specifically, he testified he lived at his brother's house in Florida and never had to pay for food, but later said he lives in a house with his friend in Connecticut and contributes to food costs through his social security income. AP-ECF No. 205, p. 55, 185.

The defendant obtained and used credit cards after his release from prison, but produced no records regarding the debts incurred on those credit cards. AP-ECF No. 205, pp. 99-100. The defendant alleged he made misrepresentations about his income to obtain these lines of credit and asserted he did not take issue with being untruthful to do so. AP-ECF No. 174-2, p. 120-21. The defendant further alleged his credit card balance payments were made by his ex-wife with cash he gave to her. AP-ECF No. 174-2, pp. 61-62. No records or corroborating testimony supporting this story were provided.

As for alleged businesses of the defendant, in 2006, the Insurance Agent's company procured insurance for a business named Classic Car Restoration ("Classic Car"). AP-ECF No. 174-14. The defendant asserted he never owned or operated Classic Car, never provided the Insurance Agent with information concerning insurance for that business, and stated his brother and son have businesses under the Classic Car name. AP-ECF No. 205, pp. 46, 118, 119-20, 170, 173. The Insurance Agent testified he

---

[3] During his deposition, the defendant first claimed that he hid this money behind a brick at a property on Front Street, West Haven, Connecticut. AP-ECF No. 205, p. 48. Upon being confronted with the fact that he did not own the Front Street property before being incarcerated, the defendant changed his story and simply said he gave the money to his brother. AP-ECF No. 205, pp. 48, 52.

believed the defendant owned Classic Car because the defendant sought the insurance company's services for Classic Car and made amendments to its insurance policy. AP-ECF No. 205, pp. 18, 19-20; 64. Further, the Insurance Agent asserted the defendant communicated there was $500,000.00 in personal property to be insured, and he noticed a lot of cars, as many as forty (40), on the property during an on-site visit of Classic Car. AP-ECF No. 205, p. 68. Because the Insurance Agent testified several times that his memory of the events in question was unclear because they had occurred so long ago, his testimony is entitled to reduced weight. AP-ECF No. 205, pp. 21, 63, 78, 93. Nevertheless, the Insurance Agent's records confirm the defendant was the named insured on the Classic Car policy from December 2006 through February 2010, and up until 2014, he was the point of contact for inspections of the site. AP-ECF No. 174-14.

Testimony further revealed the defendant would do business at a car auction house, Copart, from time to time. AP-ECF No. 205, p. 120. The defendant testified he would go to Copart with his sons and purchase cars for them while they waited in line to get the cars, but maintained he was not the owner of Classic Car. AP-ECF No. 205, p. 120-22. Evidence at trial showed the defendant's license and signature were used to purchase cars for Classic Car from Copart. AP-ECF No. 205, p. 122-23. Further, the defendant signed an affidavit on October 13, 2015, for the purchase of a motor vehicle from Copart on which he declared he was "engaged in the business of selling the following type of personal property… Motor vehicle, water craft, power sports, and auto parts." AP-ECF No. 174-25; AP-ECF No. 205, p. 122-23.

None of the evidence regarding the defendant's activities at the car auctions was persuasive or dispositive as to equity ownership or control of Classic Car. No evidence

7

of the scope of business activities of Classic Car was introduced such as information for bank accounts used for its business activities, employment information or records regarding any employees, or evidence of business transactions that generated proceeds or income for the business.

In February 2012, the defendant signed a credit application representing his yearly gross income was $150,000.00, he owned Classic Car, and had been self-employed for ten (10) years. AP-ECF No. 174-7. In that application, the defendant acknowledged he was applying for individual credit in his name and was relying on his own income and assets, not the income or assets of another person. He later testified the employment information on the application was his brother's and not his, and his involvement in the application was the result of co-signing or guaranteeing a vehicle loan for his brother. AP-ECF No. 174-7; 205, p. 171-72.

That same year, the defendant signed an agreement to purchase another vehicle he alleged was his brother's property and on which his brother alone made payments. AP-ECF No. 205, p. 37-38. In 2014, that vehicle was totaled, and the vehicle's insurance provider sent a compensatory check, with which the defendant's brother paid off the vehicle loan, and the defendant retained $3,000.00 of the proceeds. AP-ECF No. 205, p. 38. Mr. Anderson provided no detail regarding the disposition of the $3,000.00 insurance proceeds, although the sum may be included in the $7,300.00 of cash the Debtor disclosed in his bankruptcy Schedule A/B. ECF No. 174-1, p. 12.

As noted, the defendant filed the Chapter 7 Case in March 2015. AP-ECF No. 174-1. The defendant's bankruptcy Schedule E/F listed fourteen (14) unsecured, nonpriority claims, totaling $4,516,835.00, including a claim of $4,424,347.00 by Cadle,

which was undisputed, liquidated, and non-contingent. AP-ECF No. 174-1, pp. 18-20. The defendant did not introduce into evidence any financial records concerning any of his debt or any records concerning any personal property. AP-ECF No. 205, pp. 99-103. Mr. Anderson testified he did not keep any financial records from the time of his incarceration until his bankruptcy filing and had no records of the fee he paid his attorney to file the Chapter 7 Case. AP-ECF No. 205, pp. 48, 102. The defendant's Petition indicated he was not a partner of, or self-employed through, any business in the six (6) years immediately preceding the Petition Date. AP-ECF No. 174-1, pp. 32.

## V.    APPLICABLE LAW AND BURDEN OF PROOF

A core purpose of the "privilege of discharge is to allow the 'honest but unfortunate debtor' to begin a new life free from debt." *In re Peburn*, 539 B.R. 632, 635 (Bankr. D. Conn. 2015) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). Section 727(a) of the Bankruptcy Code protects creditors by allowing them to object to a debtor's chapter 7 discharge under certain enumerated circumstances. 11 U.S.C. § 727(a)(1)-(12). Denial of a discharge pursuant to § 727 is an "extreme penalty for wrongdoing," and it "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir.1996)). Generally, at "the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." Fed.R.Bankr.P. 4005. The initial burden rests on the creditor to prove its position by a preponderance of the evidence. *See In re Cestaro*, 598 B.R. 520, 527 (Bankr. D. Conn. 2019).

### a. Count One: 11 U.S.C. § 727(a)(3)

A successful § 727(a)(3) objection bars a debtor's discharge when "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information...from which the debtor's financial condition or business transactions may be ascertained, unless such act or failure to act was justified under all the circumstances of the case." 11 U.S.C. §727(a)(3) (emphasis added). The "purpose and intent" of § 727(a)(3) is to require a Chapter 7 discharge to be "dependent on a true presentation of the debtor's financial affairs." *In re Cacioli*, 463 F.3d at 234 (internal citations omitted). This subsection helps creditors ascertain the debtor's financial condition by allowing them to trace the "debtor's financial history" through "dependable information." *Id.* (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992)).

Courts employ a two-step approach in analyzing whether a debtor should be denied a discharge under §727(a)(3). *In re Cacioli*, 463 F.3d at 235. First, the initial burden lies on the party pursuing the objection. *Id.* at 234. To meet its burden, the objector must establish the "debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *Id*. Proving the debtor's intent to conceal is not required. *Id.* at 235 (citing *White v. Schoenfeld*, 117 F.2d 131, 132 (2d Cir.1941)) (§ 727(a)(3) lacks an intent element).

If the initial burden is met by the objector, the burden then shifts to the debtor to persuade the court the failure to produce financial documents is "justified" to avoid the denial of discharge. *Id.* at 235. In assessing the debtor's justification, the court must consider the particular circumstances of the case and the reasonableness of the debtor's explanation. *Id*. To that end, a court must consider a variety of factors when evaluating

10

the reasonableness of a debtor's justification, including: "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *Id.* at 237 (citing *Meridian Bank*, 958 F.2d at 1231).

The debtor should be able to produce business and personal financial documents for a reasonable period prior to their filing. *In re Cortez*, 587 B.R. 579, 586 (Bankr. D. Conn. 2018). While a specific time period is not provided for in § 727(a)(3), courts have found what constitutes a reasonable period prior to the filing must be measured on a case-by-case basis. *Cacioli*, 463 F.3d at 235. "Courts have extended their inquiry under § 727(a)(3) to as far as ten years before the commencement of the case." *In re Neupmann*, No. 19-50380, 2021 WL 5072010, at *5 (Bankr. D. Conn. Oct. 28, 2021) (citing *In re Racer*, 580 B.R. 45, 53 (Bankr. E.D.N.Y. 2018)).

b. **Count Two: 11 U.S.C. § 727(a)(5)**

Section 727(a)(5) requires an objector show "the debtor has failed to explain satisfactorily…any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). To establish this, a creditor "must introduce more than merely an allegation that the debtor has failed to explain losses*.*" 6 Collier on Bankruptcy § 727.08; *In re Speer*, 2018 WL 2283834, at *4 (Bankr. D. Conn. 2018) (finding the creditor met this burden by showing that explanations about significant assets or records were missing, including tax returns, insurance proceeds, and cash collected from tenants). If a creditor meets this requirement, "the burden of production shifts to the debtor to satisfactorily explain the loss or deficiency." *In re Inzero*, 426 B.R. 428, 431 (Bankr. D. Conn. 2009).

If "the debtor's explanation is convincing and not rebutted, there is no need for documentary corroboration."  See *In re Speer*, 2018 WL 2283834, at *4 (holding the debtor's assertions of asset deficiency were unconvincing because they were "vague and unsupported indefinite explanations of losses"); *see also, Inzero*, 426 B.R. at 431-32 (concluding documentation is not statutorily necessary for a satisfactory debt asset deficiency explanation, documentation generally supports the debtor's explanation, and in the absence of documentation, non-debtor testimony may support the debtor's position).

    c. **Count Three: 11 U.S.C. § 727(a)(4)(A)**

Parties objecting under § 727(a)(4)(A) must establish "the debtor knowingly and fraudulently, in or in connection with the case…made a false oath or account." 11 U.S.C. § 727(a)(4).  A successful § 727(a)(4)(A) objection requires the creditor establish: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case."  *In re Abraham*, 693 F. App'x. 59, 61 (2d Cir. 2017) (summary order).

Petition statements, schedules, and testimony given during 341 meetings are made "under oath" for purposes of § 727(a)(4)(A).  *In re Franco*, No. 17-21913, 2021 WL 5830617, at *7 (Bankr. D. Conn. Dec. 8, 2021); *In re Deedon*, 419 B.R. 1, 8 (Bankr. D. Conn. 2009).  Fraudulent intent may be shown through direct proof, circumstantial evidence, "the debtor's reckless disregard for the truth of his statements," or "may be inferred from a series of incorrect statements and omissions contained in the schedules."

*In re Franco*, 2021 WL 5830617, *7 (Bankr. D. Conn. 2021) (quoting *In re Singh*, 585 B.R. 330, 338–39 (Bankr. E.D.N.Y. 2018)).

The materiality of the fraudulent statement "is not dependent on whether the false testimony was harmful to creditors." *Franco*, 2021 WL 5830617 at *7 (citing *In re Goldman*, 37 F.2d 97, 98 (2d Cir. 1930)). Rather, the statement under oath becomes material if it is instrumental in the discovery of the debtor's assets. *Id.*

### d. Count Four: 11 U.S.C. § 727(a)(2)(A)

For an objector to successfully object to a discharge under § 727(a)(2)(A), it must prove "the debtor, with intent to hinder, delay, or defraud a creditor…has transferred, removed, destroyed, mutilated, or concealed … property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A).

To succeed under § 727(a)(2), the creditor must establish the debtor had actual fraudulent intent. *In re Zembko*, 367 B.R. 253, 257 (Bankr. D. Conn. 2009). Constructive intent is not sufficient to meet this requirement. *Id*. The requisite element of intent may be shown through direct proof or circumstantially through "badges of fraud." *In re Kupersmith*, 614 B.R. 428, 438 (Bankr. D. Conn. 2020). "The Second Circuit has identified six badges of fraud: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;

and (6) the general chronology of the events and transactions under inquiry." *Kupersmith*, 614 B.R. at 438 (quoting *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983)).

The court notes that a party's argument will "[fail] because they point to no record evidence" to support it. *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 147 (2d Cir. 2008). *See also, Warr v. Liberatore*, No. 13-CV-6508P, 2019 WL 3288148, at *2 (W.D.N.Y. July 22, 2019) (citing *Ayala v. Rosales*, 2015 WL 4127915, *1 (N.D. Ill. 2015) (plaintiff's "failure to provide all of the necessary record citations makes it impossible for this [c]ourt to properly address his claims of error," and thus "any arguments lacking necessary record support are, in the first instance, denied as waived")).

## VI. DISCUSSION

### a. Count One: The defendant is not entitled to a discharge pursuant to § 727(a)(3)

The plaintiff satisfied its burden under § 727(a)(3) by showing the defendant failed to maintain any personal or business financial records whereby the defendant's pre-petition financial condition could be ascertained. The plaintiff relied primarily on the defendant's testimony that he has no documents regarding his personal or business finances, for any time period. AP-ECF No. 205, pp. 99, 169. Mr. Anderson admitted he had no recollection of the amount of money he hid with his brother prior to his incarceration – totaling less than $10,000. Incredibly, Mr. Anderson testified that same fund of hidden money had sustained his living expenses from 2000 through the Petition Date. AP-ECF No. 205, p. 55.[4]

---

[4] In response to the court's question, Mr. Anderson testified that during the period from 2000 through 2015, "I did nothing because I was just aggravated with the whole system." AP-ECF No. 205, p. 178.

14

Mr. Anderson failed to produce any other records from which his financial affairs could be ascertained. For example, he claimed to have no records concerning Front Street, LLC, which owns real property he argued is encumbered by substantial real property taxes and is contaminated. AP-ECF No. 205, pp. 45, 169; AP-ECF No. 174-1, p. 12. But, no records were introduced at trial demonstrating his ownership interest in Front Street, LLC or its value, such as the property taxes due on the property, or any evidence of contamination. Further, the defendant testified he has no records regarding his credit card debt or any of the other unsecured claims listed in his bankruptcy schedules and no records of the fee he paid his attorney to commence the Chapter 7 Case. AP-ECF No. 205, pp. 48, 100-102. Based on this evidence and given the lack of any records, the plaintiff established the defendant failed to keep or preserve recorded information of his financial record during the relevant period.

Because Cadle met its initial burden under § 727(a)(3), the burden shifted to the defendant to justify the deficiencies in his record keeping. As noted, the court considers a variety of factors when evaluating the reasonableness of a debtor's justification, including: "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice" (the "*Cacioli* Factors"). *In re Cacioli*, 463 F.3d at 237 (citing *Meridian Bank*, 958 F.2d at 1231).

Here, the weight of the *Cacioli* Factors goes against the defendant and the court is unpersuaded the failure to keep records is justified. First, in considering the education, experience, and sophistication of the debtor, the defendant argues he should be held to

a standard of limited sophistication because his education ended after elementary school. However, his business activities belie this argument. Mr. Anderson's experience and conduct in commercial transactions was not so minimal that he would not have been aware he should keep some record of his financial situation, including records regarding his debts, his limited liability membership interest in Front Street, LLC and records regarding the property itself, including real property taxes owed, the alleged contamination, and any other information relevant to valuation of the property.

Regarding the volume and complexity of the debtor's business, the defendant here was not a stranger to business transactions. The record reflects since at least the 1980s, the defendant has been involved in several business ventures including the construction business which led to Cadle's million-dollar-plus debt and, in 1990, a used car parts business named A & A Used Auto Parts. AP-ECF No. 205, pp. 43, 180-81. Additionally, the record reflects the defendant was involved with a used car business – however one characterizes that involvement – including procuring and maintaining insurance, purchasing cars at auction, and handling inventory. AP-ECF No. 205, pp. 18, 43, 68, 120.

While the defendant testified he had no ownership interest in Classic Car, the Insurance Agent testified the defendant handled changes to the company's insurance coverage, including procuring insurance renewals for that business on numerous occasions. AP-ECF No. 205, pp. 18-20, 64. Even assuming Mr. Anderson's position that he did not own or control Classic Cars to be true, the level of his involvement in the business's insurance needs required that he keep and maintain records for insurance purposes, or, be able to produce such records. This he could not do.

Finally, the court, in the interest of justice, considers the credibility of the debtor. Mr. Anderson's own admission that he lied on a car loan application supports the idea that he is familiar with the documentation needed to obtain money in this era. As noted, his testimony was generally not credible. In fact, some of the only testimony by Mr. Anderson that appeared credible was that he admitted lying on credit card applications and having no qualms about doing so. AP-ECF No. 205, pp. 41-45. For those reasons, the weight of the *Cacioli* Factors goes against the defendant.

The court concludes the plaintiff has met its burden pursuant to § 727(a)(3) and the defendant failed to provide a reasonable justification for his complete lack of financial information and records.

b. **Count Two: The plaintiff's objection under § 727(a)(5) fails for lack of evidentiary support**

To successfully object to a discharge under § 727(a)(5), the plaintiff must demonstrate "the debtor has failed to explain satisfactorily…any loss of assets or deficiency of assets to meet the debtor's liabilities." The plaintiff claims the defendant should be denied a discharge under § 727(a)(5) because he failed to explain the loss of Classic Car, the loss of income generated by Classic Car, the loss of income of $150,000 reported on a credit application, and the cash he hid before his incarceration. ECF No. 207, p. 8.

The court does not find the plaintiff produced evidence sufficient to demonstrate the defendant ever owned Classic Car. Therefore, any "loss" of that asset or income generated from it is likewise not proven. Further, the defendant admitted to lying on credit applications, the only evidence he ever generated an income of $150,000. While the defendant's explanation that he lived off the hidden money from approximately 2000 to

17

the Petition Date is not credible and – as the plaintiff claims – mere fantasy, the plaintiff failed to establish the defendant had an ability to meet his liabilities that has now evaporated. Instead, the picture painted fails to identify an asset or assets, or income, that could have paid some of the liabilities in this bankruptcy case. The picture here is of few assets of little value on the part of the defendant, and an insurmountable debt of over $4,000,000 owed to the plaintiff that will never be repaid as a practical matter.

Because the plaintiff did not meet its burden to demonstrate a loss of any asset, or a lack of explanation for the loss of any asset, this claim fails.

### c. **Count Three: The plaintiff did not meet its burden under § 727(a)(4)(A)**

To succeed under § 727(a)(4)(A), the plaintiff must show the defendant "knowingly and fraudulently, in or in connection with the case…made a false oath or account." As noted above, such fraudulent statements "may be inferred from a series of incorrect statements and omissions contained in the schedules." *In re Franco*, 2021 WL 5830617, *7 (Bankr. D. Conn. 2021) (quoting *In re Singh*, 585 B.R. 330, 338–39 (Bankr. E.D.N.Y. 2018)). Cadle fails to identify with any sort of specificity what the false oath or account may be. Rather, Cadle repeats summary allegations without a single citation to the record. Based on this record, the court is unpersuaded the plaintiff met its burden and a discharge will not be denied on this basis.

### d. **Count Four: The Plaintiff's § 727(a)(2)(A) objection fails for lack of evidentiary support**

For the plaintiff to successfully object to a discharge under § 727(a)(2)(A), the plaintiff must prove the defendant concealed his property within one year before he filed his bankruptcy petition with the intent to hinder or delay a creditor. Here, the plaintiff did not satisfy this burden and a discharge will not be denied on this basis.

The plaintiff has not established by a preponderance of the evidence that the defendant concealed any property within one year before his bankruptcy filing. The plaintiff offered insurance records from February 22, 2013, to February 24, 2014, to show the defendant concealed an interest in Classic Car. AP-ECF No. 174-14, p. 6-7. This evidence does not support the idea the defendant concealed any interest in that business, or any income generated therefrom, within one year before he filed his bankruptcy petition on March 27, 2015. Due to this evidentiary deficiency, relief under § 727(a)(2)(A) will be denied.

The court has considered all other arguments and finds them unpersuasive, unsupported or otherwise without merit.

## VII.   CONCLUSION

A separate judgment will enter for the plaintiff as to Count One, and the defendant will be denied a discharge pursuant to 11 U.S.C. § 727(a)(3).

Judgment will enter for the defendant on Counts Two, Three and Four.

Once entered, the judgment is a final order subject to rights of appeal. The time within which a party may file an appeal of a final order of the bankruptcy court is fourteen (14) days after it is entered on the docket. *See*, Fed.R.Bankr.P. 8002(a)(1).

Dated this 23rd day of February, 2023, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut